T.C. Memo. 2013-214

UNITED STATES TAX COURT

KEVIN P. MCCARTHY AND CANDACE C. MCCARTHY,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MCCARTHY COMPANIES, LLC, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 7376-11L, 7394-11L.          Filed September 10, 2013.

Kevin P. McCarthy, for petitioners.

Jon D. Feldhammer, for respondent.

---

[1]Candace C. McCarthy (petitioner wife) failed to appear at trial.  The Court,
on its own motion, will dismiss petitioner wife from this case for lack of
prosecution.  Kevin P. McCarthy (petitioner husband) and McCarthy Companies,
LLC (petitioner LLC) remain.  Petitioner husband is the sole member of petitioner
LLC, a disregarded entity for Federal income tax purposes.  We will therefore treat
petitioner husband and petitioner LLC as one and the same for purposes of this
matter, unless otherwise noted.

**[*2]** MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>: These collection review matters are before the Court because petitioners challenge the propriety of two determination notices. <u>See</u> sec. 6330(d)(1).[2] Respondent issued the determination notices sustaining two final notices of intent to levy and one notice of Federal tax lien (collectively, proposed collection actions). The sole issue we are asked to decide is whether respondent abused his discretion by relying on information provided by a county tax assessor and a recorder of deeds office in sustaining the proposed collection actions. We hold he did not.

## FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulations of facts and their accompanying exhibits are incorporated by this reference. Petitioner resided in Texas at the time he filed the petition.

Petitioner operated several lines of business within the real estate industry during 2000 through 2009 (years at issue). Petitioner's business included purchasing, renovating and selling (i.e., flipping) houses, as well as providing real

---

[2]All section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

**[\*3]** property title search and foreclosure services. Petitioner operated throughout 195 counties in Texas and Arkansas and had approximately 19 employees.

Petitioner got behind on his Federal tax reporting and payment obligations and apparently became overwhelmed with the task of becoming current. Petitioner eventually became current with his Federal tax reporting obligations but failed to pay all the liabilities reported on his late-filed tax returns (unpaid tax liabilities).[3] Respondent thereafter assessed the unpaid tax liabilities, interest and penalties, which were well in excess of $1 million when respondent issued the challenged determination notices.

Petitioner proposed an installment agreement to respondent and submitted collection information statements (financial statements) as required. Petitioner disclosed on the financial statements that he owned real property at 1000 W. Louisiana Avenue in Midland, Texas (West Louisiana property), real property at 245 Mountain Springs Circle in Hot Springs, Arkansas (Mountain Springs property), a Harley Davidson motorcycle, a Dodge pickup truck, a pontoon boat, a

---

[3]Petitioner husband filed income tax returns for years 2000, 2001, 2002, 2005 and 2006 in late 2009. Petitioner LLC filed quarterly tax returns for quarters ending June, September and December 2001, March, June, September and December 2002, June 2003, September 2004, June, September and December 2007, March, June, September and December 2008 and March 2009 in mid-2009. The challenged determination notices do not address the tax return petitioner LLC filed for the quarter ending March 2009.

[*4] GMC Yukon Denali, a Mitsubishi Eclipse, a Hummer, a Cadillac, a Sharebuilder investment account and a life insurance policy. Respondent discovered through his own research that petitioner also owned real property at 214 Shore Acres Drive in Hot Springs, Arkansas (Shore Acres property).

Respondent reviewed petitioner's assets and concluded that petitioner had significant equity available to partially pay his unpaid tax liabilities.[4] Respondent repeatedly requested that petitioner borrow against or liquidate his equity so that respondent could consider the proposed installment agreement. Respondent informed petitioner that he would not consider the proposed installment agreement unless and until petitioner borrowed against or liquidated the equity available in his assets.

Petitioner made some attempts to borrow against the available equity in his assets. At least one lender denied petitioner's loan request, and at least one lender approved petitioner's loan request. Petitioner, however, neither borrowed against nor liquidated the available equity in his assets. Respondent's collection division therefore ultimately rejected the proposed installment agreement. Petitioner appealed the rejection to the Collection Appeals Program, which upheld the rejection.

---

[4]A representative of respondent's Collection Division personally observed and noted the West Louisiana property as being in good condition.

**[*5]**   Respondent subsequently initiated the proposed collection actions to collect petitioner's unpaid tax liabilities.  Petitioner timely requested a collection due process hearing (collection hearing) to challenge the propriety of the proposed collection actions.  Respondent assigned Settlement Officer Joann Mares (SO Mares) to conduct the requested collection hearing.

Petitioner argued during the collection hearing that respondent had overvalued the available equity in his assets.  In this vein, petitioner argued he was not the beneficial owner of the Shore Acres property.  Petitioner also argued that respondent had attached unduly high values to the Mountain View property and the West Louisiana property.  SO Mares determined petitioner had significant equity available to partially pay his unpaid tax liabilities.  Accordingly, SO Mares sustained the rejection of the proposed installment agreement and issued the determination notices to petitioner.

Petitioners timely filed the petitions.

OPINION

We must now decide whether respondent abused his discretion in sustaining the proposed collection actions.  We begin with the general rules that apply to proposed collection actions.

**[*6]** A. <u>Collection Hearing</u>

The Commissioner is authorized to collect an unpaid Federal tax liability by lien or levy. Secs. 6321, 6331. The Commissioner must apprise a taxpayer of the taxpayer's right to a collection hearing before an officer with the Commissioner's Office of Appeals (Appeals officer). Secs. 6320(a), 6330(a). The Appeals officer conducting the collection hearing must determine whether the Commissioner will sustain a proposed collection action. Sec. 6330(c).

An Appeals officer must take into account certain considerations in making the determination to sustain a proposed collection action. <u>Id.</u> The Appeals officer must verify that the Commissioner has satisfied all applicable legal and administrative requirements. Sec. 6330(c)(3)(A). The Appeals officer must consider all relevant issues a taxpayer raises. Sec. 6330(c)(3)(B). Finally, the Appeals officer must balance the intrusiveness of a proposed collection action against the need for effective tax collection. Sec. 6330(c)(3)(C). A taxpayer dissatisfied with an Appeals officer's determination sustaining a proposed collection action may appeal the determination to this Court. Sec. 6330(d). Taxpayers are expected to provide all relevant information requested by the Appeals officer for consideration of the facts and issues involved in the collection hearing. Secs. 301.6320-1(e)(1), 301.6330-1(e)(1), Proced. & Admin. Regs.

**[*7]** B.  <u>Standard of Review</u>

We now focus on the standard we apply in determining whether respondent abused his discretion.  Petitioner does not argue the validity of the unpaid tax liabilities.  Accordingly, we review respondent's sustaining the proposed collection actions for abuse of discretion.  <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).  We must therefore determine whether respondent acted in a manner that was arbitrary, capricious or without sound basis in fact or law.  <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

C.  <u>Rejecting the Proposed Installment Agreement</u>

Petitioner makes several arguments contesting the proposed collection actions.  These arguments serve to advance one theory--that respondent improperly rejected the proposed installment agreement.  <u>See</u> sec. 6330(c)(3)(B), (2)(A)(iii).

We now review respondent's rejecting the proposed installment agreement under our standard of review.  Based upon our examining the entire record before us, we find respondent did not abuse his discretion.

Petitioner first asserts that SO Mares abused her discretion by relying on county tax assessor valuations to determine the fair market values of the Shore

[*8] Acres property, the Mountain View property and the West Louisiana property. Petitioner argues SO Mares erred by not using a licensed real estate appraiser to determine the fair market values. Petitioner, however, cites no authority, and we can find no authority, that would require SO Mares to use a licensed real estate appraiser to determine the fair market values. Accordingly, we disagree that SO Mares abused her discretion by relying on county tax assessor valuations.

Congress has provided the Commissioner with the discretion to enter into an installment agreement with a taxpayer to facilitate the Commissioner's collecting an unpaid tax liability. Sec. 6159; see Etkin v. Commissioner, T.C. Memo. 2005-245. The Internal Revenue Manual (IRM) establishes, in part, the procedures the Commissioner will use in determining whether a proposed installment agreement facilitates the Commissioner's collecting an unpaid tax liability. See Friedman v. Commissioner, T.C. Memo. 2013-44. This Court has upheld determinations by the Commissioner that were based in part on the IRM. See, e.g., Schulman v. Commissioner, T.C. Memo. 2002-129 (upholding a settlement officer's proposed monthly installment payment computed under IRM guidelines).

The Commissioner will consider an installment agreement proposed by a taxpayer if the taxpayer is unable to fully or partially satisfy an unpaid tax liability

**[*9]** and the installment agreement will fully satisfy the unpaid tax liability. IRM pt. 5.14.1.4(2) (June 1, 2010). The ability of a taxpayer to fully or partially satisfy an unpaid tax liability is based, at least in part, on the taxpayer's available equity in real property. Id. pt. 5.15.1 (Oct. 12, 2012). The IRM requires that the Commissioner use fair market value in determining a taxpayer's equity in real property. Id. pt. 5.15.1.30. Specifically, the Commissioner may use real estate tax assessments to determine fair market value of real property. Id.

Here, SO Mares followed administrative procedures by relying on county real property tax assessments to determine the fair market values of the Mountain View property, the Shore Acres property and the West Louisiana property rather than using a licensed real estate appraiser. See id. Accordingly, her reliance on county real property tax assessments was not an abuse of discretion.

Petitioner also asserts SO Mares abused her discretion by not considering a letter petitioner submitted regarding the value of the West Louisiana property.[5] We are not so convinced. The letter petitioner submitted was a market evaluation of the West Louisiana property, not an appraisal of that property. SO Mares

---

[5]Petitioner also submitted a market evaluation for real property at 4722 Erie Avenue in Midland, Texas (Erie Avenue property). SO Mares did not include the value of the Erie Avenue property in her determination of how much equity petitioner must liquidate before respondent could consider the proposed installment agreement.

[*10] received and considered the market evaluation letter. The record reflects that SO Mares placed little to no weight on the market evaluation letter. Rather, SO Mares relied on the Midland County real property tax assessor's valuation of the West Louisiana property and respondent's own observations of the property. Petitioner has not provided sufficient evidence to establish that SO Mares' relying on the Midland County real property tax assessor's valuation and respondent's own observations of the property rather than the market evaluation letter was arbitrary, capricious or without sound basis in fact or law.

Petitioner next asserts that SO Mares abused her discretion by concluding that petitioner owned the Mountain View property. Petitioner did not disclose his owning the Mountain View property on the financial statements. Instead, respondent discovered this through his own research. Petitioner argues that, although he was the legal owner, his mother was in fact the beneficial owner at the time he proposed the installment agreement. SO Mares nevertheless included the Mountain View property's value in her calculation of petitioner's available equity.

It appears that a substantial part of petitioner's business has been searching real property titles throughout 195 counties in Texas and Arkansas. As such, it strikes us as ironic that petitioner now argues that SO Mares abused her discretion by relying on the same sort of real property title searching that gave rise, at least in

**[\*11]** part, to petitioner's unpaid tax liabilities. Irrespective of this irony, petitioner failed to provide SO Mares with evidence of this alleged beneficial ownership arrangement.[6] SO Mares therefore did not abuse her discretion by relying on the ownership of the Mountain View property as recorded in the Garland County, Arkansas, Recorder of Deeds office. See secs. 301.6320-1(e)(1), 301.6330-1(e)(1), Proced. & Admin. Regs. (a taxpayer is expected to provide relevant information for an Appeals officer to consider during a collection hearing).

Petitioner finally asserts that SO Mares abused her discretion by not setting a specific date by which petitioner had to liquidate his assets. Petitioner argues the IRM required SO Mares to provide him with a specific deadline. Respondent, in turn, provides authority to the contrary. See secs. 301.6320-1(e)(3), Q&A-E9, 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. (stating there is no deadline by which an Appeals officer is required to issue a determination notice); see also Kuretski v. Commissioner, T.C. Memo. 2012-262. Accordingly, SO Mares did not abuse her discretion by not providing petitioner with a specific deadline by which he had to liquidate the equity in his assets before she could consider

---

[6]Petitioner claims that he offered to provide evidence of this beneficial ownership arrangement but that SO Mares refused all of his calls. We find this claim incredible and therefore place no weight on it.

[*12] whether he could pay the unpaid tax liabilities through the proposed installment agreement. Moreover, petitioner did not provide any credible evidence that he would have been willing to borrow against or liquidate his available equity had SO Mares actually provided him with a specific deadline.

D. Statute of Limitations

Petitioner finally argues that the statute of limitations on collection should not be suspended during the collection hearing and the present proceeding. Petitioner fails, however, to cite any authority that would support his argument. As is the case with deficiency notices, the statute of limitations on collection is suspended while the case is pending. See sec. 6330(e)(1); see also Adams v. Commissioner, T.C. Memo. 2013-92. Petitioner requested the collection hearing and filed the petition. The statute of limitations on collection is therefore suspended.

E. Conclusion

Petitioner did not raise any other meritorious challenges to SO Mares' determination to sustain the proposed collection actions. Nor did petitioner otherwise introduce any credible evidence or make persuasive arguments that would convince us that SO Mares acted in a manner that was arbitrary, capricious or without sound basis in fact or law.

**[*13]**  The record reflects that SO Mares verified that respondent satisfied all applicable legal and administrative requirements, considered all relevant issues petitioner raised, and balanced the intrusiveness of the proposed collection actions against the need for effective tax collection.  <u>See</u> sec. 6330(c).  We therefore conclude SO Mares did not abuse her discretion by sustaining the proposed collection actions.

We have considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order of dismissal and decision will be entered in docket No. 7376-11L, and decision will be entered for respondent in docket No. 7394-11L</u>.