T.C. Memo. 2018-200

UNITED STATES TAX COURT

MEHDY NAMAKIAN, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14842-16L.                    Filed December 6, 2018.

Mehdy Namakian, pro se.

<u>Nathan C. Johnston</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  In this collection due process (CDP) case, petitioner
seeks review pursuant to sections 6320(c) and 6330(d)(1) of respondent's
determination to uphold the filing of a notice of Federal tax lien (NFTL) relating
to petitioner's unpaid Federal income tax liabilities for 2007, 2008, 2011, 2012,

[*2] and 2013.[1]  The issues for decision are whether petitioner is liable for additions to tax under sections 6651(a)(1) and (2) and 6654 for certain of these years and whether respondent abused his discretion in sustaining the NFTL.

FINDINGS OF FACT

When petitioner filed his petition, he resided in California.  At all relevant times he has worked in the financial industry.  He once earned over $400,000 per year, but beginning in 2007 his income declined.  It continued to lag in subsequent years; he reported adjusted gross income of $119,708 for 2011, $211,919 for 2012, and $149,912 for 2013.

This decline in petitioner's income caused him stress and anxiety, which were exacerbated by other misfortunes.  His mother-in-law passed away in February 2011 after a long battle with cancer; during this time his wife was preoccupied attending to her mother.  In 2014 his father-in-law passed away.

In February 2013 petitioner was diagnosed with stress-induced anxiety and depression; his symptoms included insomnia and an inability to retain focus.  According to a doctor's letter that petitioner introduced into evidence, he made a full recovery after a year of medical intervention.

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.

**[\*3]** Petitioner failed to timely file his Federal income tax returns and to make estimated tax payments for tax years 2005 through 2013.[2] He has outstanding Federal income tax liabilities for his 2007, 2008, 2011, 2012, and 2013 tax years. His 2007 and 2008 liabilities, which include section 6651(a)(1) additions to tax for late filing, were determined by stipulated decisions entered in cases before this Court.[3] His 2011 assessed liability ($10,271, including additions to tax for late filing and late payment pursuant to section 6651(a)(1) and (2), but not including interest) was based partly on his late-filed returns and partly on an agreed audit assessment made on August 19, 2013. His 2012 and 2013 assessed liabilities ($32,945 and $2,658, respectively, including additions to tax for late filing and late payment pursuant to section 6651(a)(1) and (2), and additions to tax for failure to make estimated tax payments pursuant to section 6654, but not including interest) were based on his late-filed returns.

---

[2]The extended due date of petitioner's 2011 return was October 15, 2012, but he did not file it until June 24, 2013. The extended due date of his 2012 return was October 15, 2013, but he did not file it until May 5, 2014. His 2013 return was due April 15, 2014, but he did not file it until September 9, 2014.

[3]The decision in the case concerning tax year 2007 was entered April 1, 2014, and the decision in the case concerning tax year 2008 was entered August 27, 2013. The primary issue for both 2007 and 2008 was whether, with respect to petitioner's stock sales, he should be treated as an investor or a trader for income tax purposes.

**[\*4]**   On November 17, 2015, respondent issued petitioner a notice of NFTL filing with respect to his 2007, 2008, 2011, 2012, and 2013 tax liabilities, which totaled about $85,000.[4]   On December 10, 2015, petitioner mailed to respondent Form 12153, Request for a Collection Due Process or Equivalent Hearing.  On the Form 12153 he checked the boxes for "Installment Agreement" and "Offer in Compromise".  He sent the Form 12153 to an incorrect address, following erroneous instructions from an IRS employee.  Consequently, respondent initially treated petitioner's hearing request as untimely and on June 13, 2016, issued a decision letter, sustaining the collection action, instead of a notice of determination.  Petitioner timely petitioned this Court, and respondent filed a motion to dismiss for lack of jurisdiction for want of a notice of determination.  After a hearing on the matter, however, respondent conceded that petitioner's Form 12153 should have been treated as timely filed.  On December 8, 2017, the Court remanded the case to respondent's Appeals Office.

By memorandum dated January 2, 2018, respondent's counsel advised the Appeals team manager that the case was being remanded pursuant to the Court's

---

[4]The notice of NFTL explained that the Internal Revenue Service (IRS) would issue a certificate of release of the Federal tax lien within 30 days of one of these events:  (1) payment of the full amount of the debt, (2) acceptance by the IRS of a bond guaranteeing payment of the amount owed, or (3) a decision to adjust the taxpayer's account, as in an Appeals Office hearing.

[*5] order for various purposes, including to provide petitioner an opportunity to present evidence as to his liability for section 6651(a)(1) and (2) and section 6654 additions to tax for his tax years 2011, 2012, and 2013.  On January 12, 2018, respondent's settlement officer (SO) sent petitioner a letter, advising that he had been assigned the case on remand and that "I was instructed to allow you to challenge the underlying liabilities of tax years 2011, 2012 and 2013."  The SO's letter went on to explain that if petitioner wished to propose a collection alternative, he needed to submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with verification of income and expenses.  Petitioner did not submit any of the requested information.

On February 8, 2018, the SO held a face-to-face hearing with petitioner, who made essentially three arguments:  (1) that the IRS had agreed to waive any late-filing or payment additions to tax associated with his 2011, 2012, and 2013 tax returns as part of the settlement of his Tax Court case relating to his 2007 tax year; (2) that he was unable to timely file his returns for the years at issue because he was under stress from his financial setbacks and from the death of his father-in-law; and (3) that the IRS should withdraw the NFTL because it had caused him to lose business and adversely affected his life.  The SO discussed petitioner's failure to provide the requested financial information and also discussed the requirements

[*6] for an offer-in-compromise.  Petitioner indicated to the SO that he had about $700,000 equity in his house; the SO observed that since this equity exceeded petitioner's total tax liability, an offer-in-compromise was unlikely to be accepted. They discussed the possibility of a direct deposit installment agreement as a means for petitioner to obtain a withdrawal of the NFTL.  The SO explained, however, that withdrawal of the NFTL was not automatic; petitioner would need to apply for it.  At the conclusion of the hearing petitioner indicated that he wanted to consult his tax attorney and to consider getting a loan to pay his tax.  The SO requested that petitioner call him back the next day to let him know how he wished to proceed.

Petitioner failed to call back, and on February 21, 2018, the SO called him. Petitioner requested another 90 days to come up with funds to make a payment; he also requested that the NFTL be withdrawn and the additions to tax for 2011-13 be abated.  The SO requested petitioner to put his request in writing by February 28, 2018.  On March 2, 2018, the SO received from petitioner a letter proposing that in 90 days he would pay $73,915 (apparently representing the amount that he believed to be his tax liability exclusive of any additions to tax) on the condition that respondent abate all additions to tax and interest.

**[\*7]** In a phone conversation on March 16, 2018, the SO advised petitioner that on the basis of the facts presented and taking into account petitioner's chronic failure to file returns and make estimated tax payments, he was not going to recommend abatement of the additions to tax. Because the SO declined to abate the additions to tax, petitioner made no additional proposal for a collection alternative.

On August 8, 2018, respondent issued a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the filing of the NFTL. It stated that there was no basis to withdraw the NFTL, that petitioner did not meet the reasonable cause criteria for abatement of penalties, and that since petitioner had proposed to pay the balance of his tax liabilities only if the IRS agreed to remove the additions to tax, no collection alternative was agreed on. The notice also indicated that the SO had reviewed the administrative file, verified that petitioner's 2007, 2008, and 2011-13 tax liabilities had been properly assessed, and verified that all other requirements of law and administrative procedure had been satisfied.

**[*8]**                                    OPINION

## I. Standard of Review

Section 6321 imposes a lien in favor of the United States on all property and property rights of a person who is liable for and fails to pay tax after demand for payment has been made. The lien arises when assessment is made and continues until the assessed liability is paid or becomes unenforceable. Sec. 6322. For the lien to be valid against certain third parties, the Secretary must file an NFTL. Sec. 6323(a). He must then provide written notice to the taxpayer, who may then request an administrative hearing before the Appeals Office. Sec. 6320(a) and (b)(1).

In such a hearing a person may raise spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. Secs. 6320(c), 6330(c)(2). In addition to considering issues raised by the taxpayer under section 6330(c)(2), the Appeals officer must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3). The person may challenge the existence or amount of his or her underlying tax liability in such a hearing only if he or she did not receive a statutory notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the underlying liability. Sec.

[*9] 6330(c)(2)(B). The term "underlying tax liability" includes amounts reported due on a taxpayer's return as well as statutory interest, additions to tax, and penalties. See Montgomery v. Commissioner, 122 T.C. 1, 7-8 (2004); Katz v. Commissioner, 115 T.C. 329, 339 (2000); Wilson v. Commissioner, T.C. Memo. 2012-229.

Once the Appeals officer issues a notice of determination, the taxpayer may seek judicial review in this Court. Secs. 6320(c), 6330(d)(1). If the validity of the underlying tax liability is properly at issue, we review that issue de novo. See Wadleigh v. Commissioner, 134 T.C. 280, 288 (2010); Sego v. Commissioner, 114 T.C. 604, 610 (2000). Where the underlying tax liability is not properly at issue, the Court reviews the IRS determination only for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Keller v. Commissioner, 568 F.3d 710, 716 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-166.

II. Challenge to Underlying Liabilities

Petitioner challenges respondent's determination not to abate the additions to tax under section 6651(a)(1) and (2) for 2011, 2012, and 2013 and under section

**[\*10]** 6654 for 2012 and 2013.[5]  We review this issue de novo.  See Goza v.

Commissioner, 114 T.C. at 181-182.

Respondent bears the burden of production with respect to additions to tax.

See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To

meet his burden, respondent must produce sufficient evidence establishing that it

is appropriate to impose an addition to tax.  See Higbee v. Commissioner, 116

T.C. at 446.  The burden of establishing reasonable cause remains with petitioner.

See id. at 446-447.

A.  Section 6651(a)(1) Late Filing Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to timely file a

return.  Respondent has met his burden of production by showing that petitioner

was required to file a return for each year and producing Forms 4340, Certificate

of Assessments, Payments, and Other Specified Matters, showing that petitioner

---

[5]In his pretrial memorandum, filed two weeks before trial, respondent's counsel stated, consistent with the instructions that he had provided respondent's Appeals Office in his January 2, 2018, transmittal memorandum, that petitioner's underlying liabilities for the additions to tax for 2011, 2012, and 2013 were all at issue.  At trial respondent's counsel argued for the first time that petitioner was precluded from challenging his 2011 underlying liability because that year's liability was based partly on an agreed audit assessment.  Because we conclude that petitioner is not entitled to abatement of the 2011 additions to tax in any event, we need not and do not address whether in these circumstances petitioner is precluded from challenging his 2011 underlying liability for the additions to tax in question.  Cf. sec. 301.6330-1(e)(3), Q&A-E11, Proced. & Admin. Regs.

**[*11]** did not timely file his returns. See <u>McLaine v. Commissioner</u>, 138 T.C. 228, 244-245 (2012).

A taxpayer will not be liable for an addition to tax under section 6651(a)(1) if the taxpayer can show that the failure to file was due to reasonable cause and not willful neglect. See <u>United States v. Boyle</u>, 469 U.S. 241, 245-246 (1985). Reasonable cause exists when a taxpayer exercises ordinary business care and prudence and is nonetheless unable to file his return by the date prescribed by law. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner asserts that he had reasonable cause for failing to timely file his returns for the years at issue because of stress he faced from his financial setbacks and the deaths of his mother-in-law and father-in-law. He also asserts that the uncertainty about the outcome of his Tax Court cases relating to his 2007 and 2008 tax years contributed to his failure to timely file his tax returns for 2011, 2012, and 2013.

Reasonable cause may exist if the taxpayer's or a family member's illness or incapacity prevents the taxpayer from filing his or her tax return, but not if the taxpayer is able to continue his or her business affairs despite the illness or incapacity. See <u>Ruggeri v. Commissioner</u>, T.C. Memo. 2008-300 (and cases cited therein). Although incompetence, mental illness, alcoholism, or other incapacity

[*12] may excuse a taxpayer from the late filing addition to tax, a taxpayer's selective inability to meet his tax obligations when he can conduct normal business activities does not excuse his late filing or failure to file. Kemmerer v. Commissioner, T.C. Memo. 1993-394. Further, financial difficulties generally do not constitute reasonable cause for failure to file a return. Barber v. Commissioner, T.C. Memo. 1997-206.

The evidence in the record does not suggest that petitioner was incapable of carrying on his normal business activities during the periods in question. To the contrary, he earned significant income during these periods. Consequently, while we empathize with petitioner's circumstances, we are not persuaded that his financial setback (which had been ongoing since at least 2007), the deaths of his mother-in-law and father-in-law, or his anxiety and depression constituted reasonable cause for failing to file his 2011, 2012, and 2013 returns on time.

Moreover, the pendency of litigation, even where the decision for an earlier year may affect the determination of a taxpayer's liability for a later year, is not reasonable cause for failure to timely file. See Thomas v. Commissioner, T.C. Memo. 2001-225 (holding that pending litigation, even if the outcome affects an estate's final tax liability, is not reasonable cause for failing to timely file an estate tax return). We are skeptical that the pending Tax Court litigation had anything to

[*13] do with petitioner's late filing of his 2013 return since the stipulated decision in his 2008 case was entered August 27, 2013, long before the filing deadline for his 2013 return. But even if the pending Tax Court litigation left petitioner in doubt as to his proper reporting position on his 2011 and 2012 returns, the reasonable and prudent course of action would have been to file these returns on time with the best information available, disclosing in these returns that a dispute existed as to whether he should properly be treated as an investor or trader with respect to his stock sales. See id.[6]

Finally, petitioner's pattern of chronic noncompliance--going back to at least 2005--in failing to file his returns on time weighs against a finding of reasonable cause. See, e.g., Judge v. Commissioner, 88 T.C. 1175, 1189-1191 (1987).

B. Section 6651(a)(2) Late Payment Addition to Tax

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a return unless the failure is due to reasonable cause and not due to willful neglect. Respondent produced Forms 4340 establishing that

---

[6]In the CDP hearing petitioner contended that respondent had agreed to waive additions to tax for 2011, 2012, and 2013 in connection with the settlement of his Tax Court litigation for his 2007 tax year. Petitioner has not raised this issue in this proceeding, and we deem him to have waived it. In any event, nothing in the record supports a finding that there was any such agreement.

**[\*14]** petitioner did not pay the full amounts of tax shown on his 2011, 2012, and 2013 returns. Therefore, respondent has met his burden of production, and petitioner bears the burden of proving reasonable cause. See sec. 6651(a)(2); Higbee v. Commissioner, 116 T.C. at 447.

Petitioner argues that he should not be liable for the section 6651(a)(2) failure to timely pay addition to tax because he had reasonable cause on account of his financial setbacks during the years in question. The regulations provide that a taxpayer has reasonable cause for failure to timely pay a tax if "the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also Valen Mfg. Co. v. United States, 90 F.3d 1190, 1193 (6th Cir. 1996). The regulations also state:

> In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax.

Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

[*15] Petitioner has not shown that paying his tax liabilities when due would have resulted in undue hardship or that he was otherwise unable to pay these tax liabilities on time. See Shaw v. Commissioner, T.C. Memo. 2010-210, 2010 Tax Ct. Memo LEXIS 246, at *18 ("Petitioners have provided only limited evidence regarding their ability to pay as of the date payment was actually due, and we are unable to presume that any such evidence would be favorable to petitioners."); Taylor v. Commissioner, T.C. Memo. 2009-27 (holding taxpayer liable for section 6651(a)(2) addition to tax where taxpayer failed to show how her investment's failure affected her ability to pay her taxes). Petitioner reported adjusted gross income of $119,708 for 2011, $211,919 for 2012, and $149,912 for 2013. Even if these income levels represented a decline from earlier years, the limited evidence in the record does not suggest that petitioner was incapable of paying his tax liabilities for these years. Petitioner has failed to show reasonable cause and lack of willful neglect. Consequently, he is liable for the section 6651(a)(2) additions to tax.

    C. Section 6654 Addition for Failure To Pay Estimated Income Tax

Section 6654(a) imposes an addition to tax for an underpayment of estimated taxes. This addition to tax is mandatory unless the taxpayer proves that an exception applies. See sec. 6654(e); Lukovsky v. Commissioner, T.C. Memo.

[*16] 2010-117. A taxpayer must pay estimated income tax for a particular year only if that person has a "required annual payment" for that year. See Wheeler v. Commissioner, 127 T.C. 200, 211 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). A "required annual payment" is the lesser of: (1) 90% of the tax shown on the return for the taxable year (or if no return is filed 90% of the tax for that year) or (2) 100% of the tax shown on the individual's return for the preceding taxable year. Sec. 6654(d)(1)(B). Unlike section 6651(a)(1) and (2), section 6654 contains no provision relating to reasonable cause and lack of willful neglect. See McLaine v. Commissioner, 138 T.C. at 249. Section 6654 does contain certain exceptions, however, and the burden of proof is on taxpayers to show they are covered by one of the relief provisions. Id.; see sec. 6654(e).

Respondent introduced into evidence Forms 4340 for petitioner's 2011, 2012, and 2013 tax years. Together, these forms indicate that petitioner had Federal income tax liabilities for 2012 and 2013, that he made no estimated income tax payments for 2012 and 2013, and that he filed 2011 and 2012 tax returns that showed tax due for those years. See Harris v. Commissioner, T.C. Memo. 2012-312. Petitioner has failed to demonstrate that any exception pursuant to section 6654(e) applies. Accordingly, we sustain respondent's determination of the addition to tax under section 6654(a) for petitioner's 2012 and 2013 tax years.

**[\*17]** III.  Challenge to Appropriateness of Notice of Lien Filing

Petitioner challenges respondent's determination in the supplemental notice

of determination declining to withdraw the NFTL.[7]  He argues that the NFTL

should be withdrawn because it has caused him economic hardship.

Section 6323(j) permits the Secretary to withdraw a notice of Federal tax

lien if he determines, among other things, that the "withdrawal of such notice will

facilitate the collection of the tax liability" or "the withdrawal of such notice

would be in the best interests of the taxpayer * * * and the United States."  Section

6323(j) uses discretionary, not mandatory, language, and respondent is not

required to withdraw the lien even for one of the reasons stated in section 6323(j).

See Taggart v. Commissioner, T.C. Memo. 2013-113; see also sec. 301.6323(j)-

1(c), Proced. & Admin. Regs.  Petitioner failed to take the necessary steps to apply

---

[7]At various points in the administrative proceedings and before this Court petitioner has framed his request in terms of releasing the lien rather than in terms of withdrawing the NFTL, perhaps unaware of the difference between these two remedies.  For the sake of completeness, we note that the record does not suggest any abuse of discretion by respondent in not releasing the lien.  The IRS must release a lien within 30 days after the underlying liability either has been fully satisfied through full payment of the tax or has become legally unenforceable, sec. 6325(a), or if the NFTL was erroneously filed, sec. 6326(b); see sec. 301.6326-1(b), Proced. & Admin. Regs. (explaining circumstances where NFTL is considered erroneously filed).  The record does not suggest that any of these circumstances pertain in this case or that any of the other conditions for issuing a certificate of release of lien, as set forth in the notice of NFTL, have been met.

**[*18]** for withdrawal of the NFTL and to provide requested financial information during the CDP hearing.  Respondent did not abuse his discretion in declining to withdraw the NFTL.  See Green v. Commissioner, T.C. Memo. 2014-180.

Our review of the record satisfies us that the SO properly discharged all of his responsibilities under section 6330(c).  Finding petitioner liable for the additions to tax in question for his 2011, 2012, and 2013 tax years and finding no abuse of discretion in any respect, we sustain the proposed collection action.

To reflect the foregoing,

Decision will be entered for

respondent.